THE LAW FIRM OF

# CÉSAR DE CASTRO, P.C.

ATTORNEY AT LAW

7 World Trade Center
New York, New York 10007

646.200.6166 Direct
212.808.8100 Reception
646.839.2682 Facsimile
cdecastrolaw.com

November 28, 2017

*Via* ECF

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

> Re:   *United States v. Kristaps Beresnevics,* 16 Cr. 692 (JMF)

Dear Judge Furman:

It is respectfully submitted that this Court should sentence Mr. Beresnevics to 42 months' imprisonment – 24 months' imprisonment on Aggravated Identity Theft and 18 months' imprisonment on Conspiracy to Commit Bank Fraud and Wire Fraud.  On July 13, 2017, this Court sentenced Emils Mors to 57 months' imprisonment for his role in the conspiracy for which Mr. Beresnevics has pled guilty.  Mr. Mors and Mr. Beresnevics committed identical conduct.  However, unlike Mr. Beresnevics, Mr. Mors was released on bail, fled, indicted for Bail Jumping, continued his criminal conduct, assumed a more significant role in the conspiracy, and was apprehended in Atlantic City.  Absent that egregious conduct, this Court likely would have sentenced him significantly below 57 months.  Furthermore, when compared with defendants with higher loss figures, 42 months' imprisonment would comport with both sentencing averages and means within this District, the Second Circuit, and nationally based on data compiled by the United States Sentencing Commission.

## I.   The United States Sentencing Guidelines' Advisory Range

The Guidelines calculation contained in the Pre-Sentence Report ("PSR") accurately calculates the Base Offense Level and Criminal History Category.  Accordingly, the advisory Guidelines range is 81 to 95 months' imprisonment.  However, we respectfully submit that Mr. Beresnevics's advisory Guidelines range is artificially inflated by the non-empirically based loss-enhancement of United States Sentencing Guidelines § 2B1.1, with which the Court is permitted to reject or discount.  Twelve of Mr. Beresnevics's twenty-five-point base offense level is attributable to § 2B1.1.

The loss enhancements under § 2B1.1 have been subject to severe criticism and even complete rejection by some judges in this courthouse, within this Circuit, and across the nation. *See United States v. Adelson*, 441 F. Supp. 2d 506 (S.D.N.Y. 2006); *United States v. Parris*, 573 F. Supp. 2d 744 (E.D.N.Y. 2008); *Spears v. United States*, 129 S.Ct. 840 (2009). This Court has the discretion to sentence an individual significantly below the applicable Guideline range based solely upon policy reasons and its disagreement with the Guidelines themselves. *Gall*, 552 U.S. 38 (2007); *Kimbrough*, 552 U.S. at 85. Section 2B1.1's purely arithmetical approach has never been justified by the Sentencing Commission with any empirical data. Therefore, courts have tremendous discretion to disagree with § 2B1.1's sentencing recommendations and depart from the Guidelines based purely upon "policy disagreement with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case." *See Spears*, 129 S.Ct. at 843.

Furthermore, the specific amount of loss is often "a relatively weak indicator of" a defendant's "moral seriousness . . . or the need for deterrence." *See United States v. Emmenegger*, 329 F. Supp.2d 416, 427-28 (S.D.N.Y. 2004). The loss Guidelines are simply not based on any science and artificially inflate Mr. Beresnevics's advisory Guideline range. Accordingly, this Court should find that the loss Guidelines in this case cause the offense level to overstate the seriousness of Mr. Beresnevics's offense and disregard or discount the Guidelines appropriately.

## II.    The Appropriate Sentence Under 18 U.S.C. § 3553(a)

After this Court considers all of the factors under § 3553(a), we are confident that it will agree that a sentence of 42 months' imprisonment is sufficient, but not greater than necessary for Mr. Beresnevics. A sentence of 42 months' imprisonment appropriately takes into account: (1) Mr. Beresnevics's history and characteristics that establish that he is a twenty-seven-year-old first-time offender who has worked in construction for most of his adult life, and will return to working and attending school after his release; (2) the 57 month sentence of his co-defendant that committed virtually the identical offense conduct but also engaged in egregious conduct after his arrest; and (3) the sentences of defendants with even higher loss amounts within the District, Circuit, and Nation.

1.    <u>Mr. Beresnevics's History and Characteristics Favors a Variance</u>

Mr. Beresnevics's conduct in this case does not represent his true character. The PSR accurately describes Mr. Beresnevics's personal history and characteristics. Mr. Beresnevics is twenty-seven years old and was born in Latvia. As noted in the PSR, Mr. Beresnevics is a loving son. *See* PSR at paragraph 70. His mother spoke to the Probation Office:

> According to the defendant's mother, Beresnevics is a good and loving person, who always keeps in touch with her no matter where he is. She indicated that he has a good relationship with his brothers. She indicated that he has a good heart and trusts people too much, which could have contributed to the situation in which he currently finds himself. Mrs.

2

> Beresnevics hopes that the Court understands that the defendant cares a
> great deal about his family, always puts them first, and is not a bad person.

*Id.* Mr. Beresnevics's family cares for him deeply and he cares for them deeply. They are overseas and communication has been difficult for him and the undersigned. I have only been able to communicate with them in a limited way through a representative of the Latvian Embassy.[1]

From February 4, 2017, to now, Mr. Beresnevics has been detained. For approximately ten months, he has served his time quietly, patiently, and without a single disciplinary infraction. And he has not had a single social visit. Some may say appropriately so, given that he came to the United States as a visitor and engaged in reprehensible criminal conduct. However, even if that were true, it makes serving his time a little more difficult than the average pre-trial detainee and should be considered by the Court. He has accepted responsibility for his criminal conduct and will serve his time as productively as possible, return to his country, and complete his college education. His criminal conduct does not represent his true character and favors a downward variance.

2.   <u>A Sentence Greater Than 42 Months' Imprisonment Would Represent an Unwarranted Sentencing Disparity</u>

This Court should sentence Mr. Beresnevics to less time than it sentenced his co-defendant Emils Mors.

First, their criminal conduct was virtually identical. Both came to the United States, opened bank accounts, and withdrew funds for leaders of the conspiracy. As noted in the PSR, "Mors committed conduct similar to Beresnevics, in that as an individual visiting the U.S. on a tourist visa, he established bank accounts at various bank branches in New York City in the names of various companies. After funds were wire-transferred into these accounts, in connection with several Internet-based fraud schemes, Mors withdrew the funds, typically in amounts below $10,000." PSR at Paragraph 31.

Second, despite their almost identical roles in the conspiracy, Mr. Mors's plea agreement did not require him to plead guilty to aggravated identity theft, a charge carrying a mandatory 24 months' consecutive sentence (the difference between their advisory Guidelines ranges).

Third, Mr. Mors distinguished himself from Mr. Beresnevics when he engaged in egregious conduct following his initial arrest. "Mors was arrested on November 29, 2016[,] in Atlantic City, New Jersey, presented on the Indictment, and detained. Between September 22, 2016, when Mors was released on bail, and November 29, 2016, when Mors was arrested, he rejoined the conspiracy and continued to perpetrate the wire fraud described herein. In fact, following his first arrest, Mors rose to the level of supervisor in

---

[1] Mr. Beresnevics's family and friends have indicated a willingness to write letters in support, however, I have not received any to date. I have been reaching out to those who expressed interest *via* e-mail. I hope and expect that I will receive letters prior to sentencing and will forward them to the Court under separate cover.

the conspiracy, overseeing the activities of other individuals from Latvia and Lithuania who were opening bank accounts." *See* Government's Sentencing Memorandum in *United States v. Mors*, 16 Cr. 692-01 (JMF) at Page 3. Furthermore, it appears that this egregious conduct was the primary reason that the Court did not vary downward or credit the defense arguments for leniency. The Court stated at Mr. Mors's sentencing:

> I must say I would find the defense arguments for leniency much more compelling but for the period of time between the defendant's original arrest and his subsequent arrest. Indeed, I would find them more compelling, even if he had absconded, if he was either making efforts to go back to his home country or simply trying to avoid recapture, but the fact that he returned and resumed his criminal activity and not only did so but it sounds from all accounts, and there's no dispute, that he assumed a more significant role in the ring is to me deeply, deeply concerning and to me rebuts or counteracts any argument for mitigation here.

*See* Mors Sentencing Transcript at Page 20. The Court further noted that Mr. Mors's conduct following his original arrest was the "most significant" and but for that conduct, it "would be a very different case." *Id.* at 21, 22.

Fourth, and last, sentencing Mr. Beresnevics within the advisory Guidelines range would result in an unwarranted sentencing disparity between him and similarly situated defendants in the District, Circuit, and Nationwide. Mr. Beresnevics is a Criminal History Category ("CHC") I. In 2016, the average sentence length, nationally, for defendants in CHC I sentenced pursuant to U.S.S.G. § 2B1.1 was 30 months with a corresponding average loss amount of $1,801,472. Based on those same parameters, in the Second Circuit the average sentence length was 27 months with a corresponding average loss amount of $2,654,452. And in this District the average sentence length was 27 months with a corresponding average loss amount of $2,439,213.

In 2015, the average sentence length nationally, for defendants in CHC I sentenced pursuant to U.S.S.G. § 2B1.1, was 31 months with a corresponding average loss amount of $2,317,752. Based on those same parameters, in the Second Circuit the average sentence length was 27 months with a corresponding average loss amount of $4,876,098. And in this District the average sentence length was 27 months with a corresponding average loss amount of $5,822,270.

Notably, these averages do not include defendants who were sentenced to probation. The failure to include probationary sentences results in significantly higher averages. The Commission included sentences of probation in calculating the average sentences for defendants sentenced under U.S.S.G. § 2B1.1 in the "all" criminal history categories. The resulting averages, which are based on the same loss amount as the averages for the 2015 defendants in CHC I, were decidedly lower because of the inclusion of sentences of probation. Those averages were 24 months nationally, 21 months in the Second Circuit, and 22 months in this District. The following is a chart reflecting this data, which includes the median sentences for the given time periods and the total number of sentences included in the calculations.

4

| Jurisdiction | Time Period | Mean | Median | 2B1.1 Sentences Included in Calculation |
|---|---|---|---|---|
| Nationally All* | 2015 | 24 | 12 | 7,858 |
| Nationally CHC I | 2015 | 31 | 21 | 3,338 |
| Nationally Loss | 2015 | $2,317,752 | $130,301 | 5,906 |
| 2d Cir. All* | 2015 | 21 | 12 | 661 |
| 2d Cir. CHC I | 2015 | 27 | 18 | 329 |
| 2d Cir. Loss | 2015 | $4,876,098 | $212,998 | 408 |
| SDNY All* | 2015 | 22 | 12 | 328 |
| SDNY CHC I | 2015 | 27 | 18 | 180 |
| SDNY Loss | 2015 | $5,822,270 | $225,628 | 159 |
| Nationally All | 2016 | 32 | 24 | 4,705 |
| Nationally CHC I | 2016 | 30 | 21 | 2,900 |
| Nationally Loss | 2016 | $1,801,472 | $137,828 | 5,647 |
| 2d Cir. All | 2016 | 29 | 18 | 348 |
| 2d Cir. CHC I | 2016 | 27 | 16 | 242 |
| 2d Cir. Loss | 2016 | $2,654,452 | $227,125 | 473 |
| SDNY All | 2016 | 27 | 18 | 174 |
| SDNY CHC I | 2016 | 27 | 16 | 116 |
| SDNY Loss | 2016 | $2,439,213 | $291,313 | 215 |
| | | | | |
| *Averages include sentences of probation. | | | | |
| | | | | |
| All information reflected in this chart was obtained from the interactive sourcebook provided on the Commission's website, which is available at: https://isb.ussc.gov/Login. | | | | |

The above statistics do not include defendants facing a two-year consecutive sentence for aggravated identity theft.  Accordingly, Mr. Beresnevics seeks a sentence higher than the above averages.  The 42-month sentence that Mr. Beresnevics seeks is reasonable given the above sentencing statistics and the fact that he faces an additional 24 months' imprisonment on the Aggravated Identity Theft charge.  Accordingly, this Court should sentence Mr. Beresnevics to 24 months' imprisonment on the Aggravated Identity Theft, and 18 months' imprisonment on the Conspiracy to Commit Bank and Wire Fraud.

A sentence within the advisory Guidelines range would create an unwarranted sentencing disparity between Mr. Beresnevics and (1) his co-defendant Emils Mors, and (2) defendants sentenced under U.S.S.G. § 2B1.1 with a CHC I nationally, in the Second Circuit, and in this District.

**III.     Conclusion**

For the foregoing reasons, it is respectfully requested that Mr. Beresnevics be sentenced to 42 months' imprisonment.  We submit that when the Court takes into account (1) Mr. Beresnevics's history and characteristics, (2) the sentences of his co-defendant Emils Mors and defendants in the District, Circuit, and nationally, and (3) the remaining sentencing factors under 18 U.S.C. § 3553(a), it will agree that a sentence of 42 months' imprisonment is appropriate.


Respectfully submitted,

        /s/

César de Castro

cc:     Thane Rehn
        Danielle R. Sassoon
        Nicolas Landsman-Roos
        Assistant United States Attorneys
        (*Via* ECF)