

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 5, 2017

**BY ECF**

The Honorable Jesse M. Furman
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States* v. *Kristaps Beresnevics*, 16 Cr. 692-01 (JMF)

Dear Judge Furman:

    The defendant in this case, Kristaps Beresnevics, is scheduled to be sentenced on December 12, 2017 at 3:30 p.m., having pled guilty to conspiracy to commit bank fraud and wire fraud and aggravated identity theft. The Government respectfully submits this letter in advance of the sentencing. Pursuant to a plea agreement between the parties, the United States Sentencing Guidelines ("Guidelines") range is 81 to 95 months' imprisonment. For the reasons set forth below, the Government submits that a sentence within the Guidelines range is warranted in this case.

    **A. Offense Conduct**

    This case involves a wire fraud and money laundering conspiracy by a network of individuals located in New York and oversees. The conspiracy has targeted victims principally through variations on an internet fraud: a member of the conspiracy posts an advertisement for a boat or car for sale on Craigslist. Often these advertisements use the names of real automobile dealerships to lend credibility to the postings. When prospective buyers respond to these advertisements, members of the conspiracy negotiate with them over email—again, often using email accounts set up in the names of real car dealerships—and provide bank wiring instructions to the buyers. After paying, though, the expectant buyers never receive any vehicles.

    Victims of this scheme typically do not realize that they have been defrauded for a matter of days. And during that period, members of the conspiracy withdraw the funds wired by victims into the bank accounts specified in the fraudulent emails to those victims. Those bank accounts have been set up by individuals recruited from Baltic countries, who travel to the United States, open bank accounts in the names of fictitious corporations, and then wait to withdraw victims' funds as soon as they are deposited into these accounts. Once the funds are withdrawn, they are laundered oversees.

  Kristaps Beresnevics is one of those individuals who opened bank accounts and withdrew victims' funds. Beresnevics was recruited in Latvia to travel to the United States and earn money by opening bank accounts to receive the funds that were wired into those accounts, and then withdraw those funds before the fraud was discovered. (U.S. Probation Office's Final Presentence Report, dated November 21, 2017 ("PSR"), ¶¶ 19-24). Beresnevics arrived in the United States in May 2016 and quickly began opening bank accounts in the name of Beresko Corp, a shell company he incorporated in New York in June 2016. (*Id.* ¶ 19.) Beresko Corp., though, existed in name only: it was not involved in any form of business, and did not have a physical location.

  Victims of fraudulent online advertisements wired money into the accounts that Beresnevics set up, and he withdrew the funds shortly after these wire transfers. (*Id.* ¶¶ 21-24) Mors withdrew the funds in amounts less than $10,000 to avoid scrutiny from the banks and account closures. (*Id.* ¶ 24) Beresnevics was also in possession of a forged passport in another person's name at the time of his arrest, and that passport had been used to set up additional bank accounts in the name of another company. Beresnevics withdrew victim funds that had been wired into these accounts as well. Beresnevics himself withdrew at least $40,000 in funds from bank accounts he opened in furtherance of the fraud scheme. He knew that the funds he was withdrawing were derived from a variety of Internet fraud schemes.

  Beresnevics did not work alone. He worked with a group of five to ten other individuals from Latvia and Lithuania, who traveled between hotels in New York and New Jersey, rented cars, and paid for their expenses using the proceeds of their fraud and stolen credit card numbers they purchased on the Internet. Evidence from a search of Beresnevics' cellphone indicates that he played a critical supervisory role in this group. PSR ¶ 8(g). Among other things, he obtained stolen credit card numbers on the internet and used them to book hotel rooms and rental cars for the group. He also maintained records of bank accounts opened by himself and by others, and instructed other members of the group regarding when to withdraw funds from bank accounts they opened. In total, the small group of conspirators that Beresnevics helped to supervise caused a direct loss amount of at least $357,000 in funds withdrawn from bank accounts into which victims had wired money. PSR ¶ 8(c).

 **B. Procedural History**

  On August 30, 2017, the defendant pleaded guilty to Counts One and Four of the Indictment—conspiracy to commit bank and wire fraud and aggravated identity theft. On June 26, 2017, the U.S. Probation Office ("Probation") issued the final Presentence Investigation Report. Probation recommends a within-Guidelines sentence of 81 months' imprisonment and no supervised release. (PSR at 22.) On November 28, 2017, the defendant filed his sentencing submission, which requests a below-Guidelines sentence of 42 months' imprisonment—18 months for the fraud count and a consecutive 24 months for the aggravated identity theft count. The defendant principally argues that he is less culpable—or at least no more culpable—than his co-conspirator Emils Mors, who had a Guidelines range of 57 to 71 months and who received a sentence of 57 months. Accordingly, the defendant argues that a below-Guidelines sentence would avoid disparities with other similarly-situated defendants in other cases both within this District and nationwide.

## C. Discussion

A significant sentence of incarceration is necessary in this case to reflect the seriousness of the defendant's offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence to this defendant and other similarly situated individuals, and to protect the public. *See* 18 U.S.C. § 3553(a)(2)(A)-(C). All of these considerations weigh heavily in favor of a substantial sentence—one within the Guidelines range of 81 to 95 months' imprisonment.

*First*, a significant prison sentence is necessary to reflect the seriousness of the defendant's conduct, to promote respect for the law, and to provide just punishment. The conspiracy outlined herein resulted in millions of dollars in losses to consumers, with over three hundred fifty thousand dollars of those losses directly attributable to the group of conspirators that the defendant directly worked with and supervised. While the defendant was not involved in posting fraudulent advertisements on the Internet or defrauding victims, he was necessary to launder the funds and was aware that they were procured by fraud. Without the defendant—and those like him—there would have been no way to withdraw the money victims sent into bank accounts controlled by the conspiracy. Many of these victims devoted considerable savings to the purchases of automobiles and boats—savings that were taken by the defendant and sent overseas. And in addition to withdrawing funds from bank accounts, the defendant played an important role in sustaining the fraudulent conspiracy by coordinating the booking of hotel rooms and rental cars using his ability to obtain stolen credit cards over the internet.

*Second*, a significant sentence of imprisonment is necessary to afford adequate deterrence to the defendant and to others similarly situated. Beresnevics, and others like him, was recruited to come to the United States to open bank accounts, earn money, and then return to Latvia. Believing there is little downside to becoming involved in this scheme, many young individuals from Baltic states have come to the United States to serve as "money mules," always intending to return to their native country. A significant sentence in this case is necessary to send a message to these would-be "money mules" that there are serious consequences associated with this type of fraud and money laundering activity.

*Third*, with respect to relative culpability, this defendant is properly viewed as a mid-level participant in the conspiracy. He was not the highest ranking member of the conspiracy in the United States, but he had attained a supervisory role, higher than money mules who only withdrew funds from bank accounts on the direction of others. As the defendant argues, his role in the conspiracy was in many ways quite similar to Emils Mors, who received a within-Guidelines sentence of 57 months' imprisonment. However, the defendant's Guidelines range is 24 months higher than Mors' range was for a very important reason: Unlike Mors, he not only opened bank accounts in his own name, but also used a fake passport to open bank accounts in the name of another person. The defendant's aggravated identity theft is independently wrongful, on top of the harms created by his bank fraud. Aggravated identity theft harms victims who may find themselves unable to open a bank account of their own, or to obtain a visa to travel to the United States, due to red flags tied to their identity based on another person's criminal activity. Identity theft also makes it more difficult for law enforcement to detect crime and apprehend the

perpetrators.  Congress has specifically mandated that a sentence for aggravated identity theft be two years consecutive to the sentence imposed for the underlying offense.  Here, that means that a sentence within the Guidelines of 81 to 95 months' imprisonment is appropriate.

       Very truly yours,

       JOON H. KIM
       Acting United States Attorney

by: _____
       Thane Rehn
       Danielle R. Sassoon
       Nicolas Landsman-Roos
       Assistant United States Attorney
       (212) 637-2354 / -1115 / -2421